Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| DAVID THOMAS ALEXANDER<br><br>Recurrido<br><br>v.<br><br>YADIRA MARIN GONZALEZ<br><br>Peticionaria | KLCE20250140 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2023RF00335<br><br>Sobre: Custodia-Relaciones Paterno/Materno Filiales |
|---|---|---|

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

**Brignoni Mártir, Juez Ponente**

## RESOLUCIÓN

En San Juan, Puerto Rico, a 25 de febrero de 2025.

Comparece ante nos, Yadira Marín González (en adelante, "la peticionaria") a los fines de solicitar nuestra intervención para que dejemos sin efecto la "*Resolución Interlocutoria"* emitida el 23 de enero de 2025 y notificada el 24 de enero de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante la referida resolución, dicho tribunal declaró *No Ha Lugar* la "*Urgente Moción en Solicitud de Hogar Seguro,*" presentada por la peticionaria. Todo, dentro de un caso sobre custodia y relaciones paterno/maternos filiales, instado por David Thomas Alexander (en lo sucesivo, "el recurrido").

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del recurso presentado.

**I.**

La controversia que está hoy ante nuestra consideración tiene su origen en la "*Urgente Moción en Solicitud de Hogar Seguro,*" presentada el 22 de enero de 2025, por la peticionaria. La referida moción fue radicada dentro de la reclamación existente entre las partes sobre la custodia de su hijo menor. En esencia, mediante dicha moción, la peticionaria solicitó que se declarara hogar seguro una propiedad cuyos

Número Identificador

RES2025_____

dueños registrales son el recurrido y su madre. Para fundamentar la moción, alegó que el aludido menor había vivido prácticamente toda su vida en la referida propiedad. Además, planteó que el recurrido era en realidad el dueño registral de dicha propiedad, debido a que era quien pagaba los gastos necesarios de la misma. Agregó, que el motivo de su solicitud se debía a que el recurrido había instado una reclamación de numeración alfanumérica BY2025CV00087 a los efectos de lograr que su hijo y ella fueran desahuciados de la propiedad. Por lo cual, solicitaba que el referido bien inmueble fuera declarado como su hogar seguro.

En la misma fecha, el recurrido presentó "*Oposición a Urgente Solicitud de Hogar Seguro por ser Contrario a Derec[h]o y Otros.*" En síntesis, adujo que la propiedad en cuestión pertenece en comunidad a su madre y él. Añadió, que nunca estuvo casado con la peticionaria y que ella no había contribuido a los gastos de la propiedad. Además, argumento que el derecho de hogar seguro no puede incidir en el derecho de terceras personas, como sería el derecho copropietario de su madre. En vista de lo anterior, peticionó que se declarara *No Ha Lugar* la "*Urgente Moción en Solicitud de Hogar Seguro.*"

En atención de los escritos presentados, el 24 de enero de 2025, el foro recurrido notificó la "*Resolución Interlocutoria*" que hoy nos ocupa. Mediante esta, declaró *No Ha Lugar* la "*Urgente Moción en Solicitud de Hogar Seguro,*" presentada por la peticionaria. **Además, expuso que ello no era impedimento para revisar la pensión alimentaria del menor a los fines de obtener un pago o aportación para sufragar el costo de una vivienda para el referido menor.**

Tras evaluar una oportuna moción de reconsideración, presentada por la peticionaria y una "*Oposición a Reconsideración,*"[1] presentada por el recurrido, el 29 de enero de 2025, el foro primario notificó una

---

[1] En la misma fecha, el recurrido presentó copia de la escritura intitulada "Segregation, Purchase and Sale" del año 2006 en la que aparece junto a su madre como parte adquirente del bien inmueble objeto de controversia. Asimismo, luego de una "*Orden*" emitida por el foro primario, el 30 de enero de 2025, el recurrido presentó un documento del Registro de la Propiedad intitulado "*Hoja Simple.*" Mediante este, establece que él y su madre son los titulares registrales de la propiedad en cuestión.

"*Resolución Interlocutoria.*" Mediante esta, declaró *No Ha lugar* la reconsideración de la peticionaria.

En desacuerdo, el 10 de febrero de 2025, la peticionaria compareció ante nos mediante un recurso de *certiorari.* A través de este, esbozó los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD DE HOGAR SEGURO DE FORMA SUMARIA Y SIN CELEBRACIÓN DE VISTA EVIDENCIARIA – EXISTENCIA HECHOS ESENCIALES EN CONTROVERSIA – EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.
>
> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE INSTANCIA AL NO DECLARAR COMO HOGAR SEGURO LA PARTUCIPACIÓN DEL PADRE EN LA PROPIEDAD QUE RESIDE EL MENOR.

**II.**

**A.     Recurso de *Certiorari*:**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Rivera et al v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Íd.* Ahora bien, el ejercicio de esta discreción no es absoluto. Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

La Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, delimita los criterios para la expedición de un auto de *certiorari.* Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera Gómez v. Arcos Dorados Puerto Rico*, supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, 2023 TSPR 145; *Rivera Gómez v. Arcos Dorados Puerto Rico*, supra; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, *supra*, dispone los siguientes criterios:

**A.** Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

**B.** Si la situación de hechos planteada es la más indicada para el análisis del problema.

**C.** Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

**D.** Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

**E.** Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

**F.** Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

**G.** Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto. *Citibank v. ACBI,* 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". Id. pág. 735; *Graciani*

*Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". *Íd.*; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Íd.*; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del caso hace un análisis liviano y la determinación resulta irrazonable. Id. pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de *certiorari* y ejercer nuestra función revisora.

**B.   Derecho de Hogar Seguro**:

El derecho de hogar seguro tuvo su génesis en nuestro ordenamiento jurídico mediante la aprobación de la Ley de 12 de marzo de 1903 (ley para definir el homestead). Véase, *Candelario Vargas v. Muñiz Díaz*, 171 DPR 530, 536-537 (2007).  Posteriormente, el aludido derecho fue regulado por el Artículo 109A del derogado Código Civil de 1930, 31 LPRA sec. 385 y por la Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, Ley Núm. 195-2011, 31 LPRA sec. 1858c. Mediante la referida legislación especial, el derecho a hogar seguro se concedía como un remedio de equidad. *Íd.* En la actualidad, dicho derecho se encuentra regulado en el capítulo sobre "la vivienda familiar ante la disolución matrimonial" del Código Civil de Puerto Rico del 2020. En específico, el artículo 477 del precitado capítulo establece lo siguiente:

> Cualquiera de los excónyuges o cualquiera de los hijos que quedan bajo su patria potestad, puede solicitar el derecho a permanecer en la vivienda de la Sociedad de Gananciales que constituye el hogar principal del matrimonio y de la familia antes de iniciarse el proceso de divorcio. Este derecho puede reclamarse desde que se necesita, en la petición de disolución del matrimonio, durante el proceso o luego de dictarse la sentencia.

En los casos donde la vivienda familiar principal sea privativa de cualquiera de los excónyuges y exista otra vivienda perteneciente a la Sociedad de Ganaciales, el Tribunal podrá establecer como vivienda familiar la propiedad perteneciente a la Sociedad de Ganaciales. En los casos en que no exista una vivienda perteneciente a la Sociedad de Ganaciales, el tribunal determinará como se cumplirá con el derecho a hogar seguro. 31 LPRA sec. 6851.

En cuanto a los criterios para conceder el derecho a hogar seguro, el artículo 478 establece lo siguiente:

Para conceder el derecho a permanecer en la vivienda familiar, el tribunal debe considerar las siguientes circunstancias:

(a)    los acuerdos de los cónyuges sobre el uso y el destino de la vivienda durante la vigencia del matrimonio y después de su disolución;

(b)    si el cónyuge solicitante mantiene la custodia de los hijos menores de edad;

(c)    si el cónyuge solicitante retiene la patria potestad prorrogada o la tutela de los hijos mayores incapacitados o con impedimentos físicos que requieren asistencia especial y constante en el entorno familiar;

(d)    si los hijos mayores de edad, pero menores de veinticinco (25) años, permanecen en el hogar familiar mientras estudian o se preparan para un oficio;

(e)    si la vivienda familiar es el único inmueble que puede cumplir razonablemente ese propósito dentro del patrimonio conyugal, sin que se afecte significativamente el bienestar óptimo de los beneficiados al momento de su concesión con más necesidad de protección;

(f)    si el cónyuge solicitante, aunque no tenga hijos o, de tenerlos, no vivan en su compañía, necesita de esa protección especial, por su edad y situación personal; y

(g)    cualquier otro factor que sea pertinente para justificar el reclamo. 31 LPRA sec. 6852.

Así pues, en nuestro ordenamiento jurídico el derecho de dominio de un progenitor está supeditado a intereses de mayor jerarquía. *Crespo Quiñones v. Santiago Velázquez,* 176 DPR 408, 416 (2009). Por lo cual, "el derecho de dominio del padre o cualquier interés propietario que pueda tener sobre la vivienda familiar cede ante el bienestar de los hijos." *Íd.* En virtud de lo anterior, el derecho a hogar seguro ha sido concedido en diversas circunstancias. Tales como en casos en que la propiedad familiar consta inscrita a nombre de los hijos del disuelto matrimonio. Véase, *Rodríguez v. Pérez, 161 DPR 637, 656-657* (2004), citando a *Irizarry v. García*, 58 DPR 280 (1941). De igual modo, el derecho de

hogar seguro ha sido extensivo en casos en los cuales la propiedad no es de naturaleza ganancial, sino un bien común entre excónyuges y en circunstancias en las cuales la propiedad que se reclama como hogar seguro fue la vivienda habitual de una relación afectiva análoga a la conyugal. Véase, *Candelario Vargas v. Muñiz Díaz*, supra. No obstante, la concesión del referido derecho no se extiende de una forma automática, dado que depende de preceptos de equidad, de las circunstancias particulares de cada caso y de la satisfacción de una necesidad legítima. *Candelario Vargas v. Muñiz Díaz*, supra, pág. 548.

Además, es meritorio destacar que el derecho de hogar seguro tiene "una íntima conexión con el derecho de alimento de los padres a los hijos." *Candelario Vargas v. Muñiz Díaz*, supra, pág. 545. "Pues, como sabemos, corresponde a los padres el deber de alimentar a los hijos y entre los alimentos debe comprenderse la habitación." *Íd.* A tono de ello, el Artículo 653 del Código Civil define el contenido de la obligación alimentaria como sigue:

> **Se entiende por alimentos todo lo que es indispensable para el sustento**, **la vivienda**, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia. Cuando el alimentista es menor de edad, los alimentos comprenden también su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales. 31 LPRA sec. 7531. (Énfasis suplido).

Cónsono con lo anterior, los progenitores tienen un deber de suplir las necesidades físicas e intelectuales de sus hijos, por el fundamento medular que surge de la relación paternofilial. *Argüello v. Argüello*, 155 DPR 62, 70-71 (2001). Es, por tanto, dicha obligación, un deber moral y jurídico de rango constitucional mediante el cual se preserva el bienestar de los hijos menores. Véase, *Montes Díaz v. Montes James*, 2024 TSPR 27. Tan es así, que los progenitores "legalmente establecidos como tales, tengan o no la patria potestad o vivan o no en compañía de sus hijos menores, están obligados a velar por éstos y a proveerles alimento." *Chévere v. Levis*, 150 DPR 525, 539 (2000).

Además, la cuantía de los alimentos es proporcionada a los recursos de la persona alimentante y a las necesidades de la persona alimentista, por lo cual se "reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo". 31 LPRA sec. 7567; *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 108 (2019). Ante ello, la pensión alimentaria puede ser modificada cuando existan "cambios sustanciales que alteran significativamente las necesidades del alimentista y los recursos del alimentante." 31 LPRA sec. 7567. Los referidos cambios sustanciales pueden ampararse en variaciones de capital, gastos, necesidades o las circunstancias del menor alimentista. *Pesquera Fuentes v. Colón Molina*, supra, pág. 106-107.

**III.**

En el presente caso, la peticionaria recurre de la denegatoria a su "*Urgente Moción en Solicitud de Hogar Seguro*," la cual iba dirigida a que se declarase hogar seguro una propiedad que pertenece en comunidad al recurrido y su madre. Tras evaluar la totalidad del expediente ante nuestra consideración y a la luz de las consideraciones esbozadas en la Regla 40, *supra*, concluimos *denegar* la *expedición* del recurso de epígrafe.

Sabido es que la expedición de un auto de *certiorari* está supeditada al ejercicio de nuestra sana discreción. En vista de ello, al evaluar los criterios que guían el referido ejercicio discrecional, determinamos que el recurso ante nuestra consideración no reúne las condiciones necesarias para su expedición, dado que no se recurre de un dictamen viciado de prejuicio, parcialidad o contrario a derecho al observar que el pago o aportación de una vivienda es considerado como uno de los gastos necesarios de la pensión alimentaria.

**IV.**

Por los fundamentos expuestos, denegamos la *expedición* del presente auto de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones